STATE OF IOWA, Appellee, v. EARL ALBERTSON et al., Appellants.

JUNE 26, 1928.

*R. R. Ramsell* and *A. W. Enoch,* for appellants.

*John Fletcher,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, *E. K. Bekman,* County Attorney, and *Jaques, Tisdale & Jaques,* for appellee.

FAVILLE, J.—In August of 1926, two engines belonging to the Chicago, Milwaukee & St. Paul Railway Company were out of commission, and stored on a track in said company's yards at Ottumwa, Iowa. Certain of the fittings on these engines had been removed by someone, without authority of said company, and had been piled on the right of way of the company in said yards, where the weeds had grown up between the tracks. A police officer in the employ of the railway company secreted himself in said yards, near where the fittings had been piled. About midnight on the night of August 4, 1926, he noticed two men on the railroad right of way, at a private road crossing about 150 feet away. They came along the track as far as the storage track on which the engines were located, and then followed the course of said track. The officer crawled through the cars on said track, and heard a remark by one of the men, "We are not far enough." He testified that, at or about that time, he heard a noise which sounded like the clanking of metal. The officer flashed a flash light, and located the two appellants near one of the piles of metal. He was then about twenty feet from them. He ordered them to hold up their hands, and one of them, who was carrying a gunny sack at the time, dropped it, in obeying the order. The officer immediately arrested the appellants, and took them to jail. An automobile that they admit having driven that night was located near the crossing of the private road referred to. The appellants were witnesses in their own behalf, and testified as to their whereabouts on the evening in question, explaining that they had been to a dance; that one of them was the owner of coon dogs; that they had taken two young coon dogs, to train them that night, after the dance; and that they heard the baying of the dogs, and were going down the right of way of the railroad track in pursuit of the dogs. They explained that they were carrying the gunny sack, expecting to capture a coon which the dogs had treed. There was evidence tending to show that there were no trees in the vicinity of the right of way near where the appellants were arrested, and the

officer who arrested them testified that he did not hear the baying of hounds. We have not attempted to review in detail the evidence in the case, but only to state sufficient thereof for the purposes of the legal questions involved.

I. The court instructed the jury as follows:

"If you find from the evidence that any part of the alleged stolen property was in the possession and control of the defendants at any time prior to the arrest of the defendants, then such possession would be what is known in the law as recent possession of stolen property, and such possession, if unexplained, would constitute sufficient prima-facie evidence to warrant the jury in finding the defendants guilty of the larceny of the property."

No other instruction was given that pertained to said matter. Error is predicated upon the giving of this instruction. The particular ground of challenge is that there was no evidence in the case from which the jury could find that the appellants ever had possession of the property in controversy, and hence the instruction had no application to the facts of the case, and was prejudicial to the appellants. It is to be noticed that the court in no way attempted to define or explain to the jury what would constitute possession of stolen property. The mere presence of the appellants at or about the place on the right of way of the railway company where stolen property was, or where it was secreted, is not, of itself, sufficient to prove that the appellants were in the possession of said stolen property at the time. The general rule in cases where recent possession of stolen property by a defendant is offered in evidence of the larceny is that the possession not only must be recent, "but it must be personal, exclusive, and with a distinct implied or express assertion of ownership." Underhill's Criminal Evidence (3d Ed.), Section 469; *State v. Keller,* 191 Iowa 740; *State v. Ireland,* 192 Iowa 489; *Van Straaten v. People,* 26 Colo. 184 (56 Pac. 905) ; *People v. Hurley,* 60 Cal. 74; *People v. Wilson,* 151 N. Y. 403 (45 N. E. 862) ; *State v. Lackland,* 136 Mo. 26 (37 S. W. 812); *Funderburg v. State* (Tex. Cr.), 34 S. W. 613; *Clark v. State,* 30 Tex. App. 402 (17 S. W. 942) ; *People v. Horton,* 7 Cal. App. 34 (93 Pac. 382) ; *State v. Fogle,* 211 Mo. App. 18 (244 S. W. 105) ; *State v. Goldfeder* (Mo.), 242 S. W. 403.

Under the evidence in this case, there was no such proof of

possession of the stolen property as made the giving of this instruction applicable to the facts of the case. In any event, it left it for the jury to determine what would constitute possession of stolen property, without any direction or instruction by the court in relation thereto. The court erred in giving the instruction in question, under the facts as shown by the record.

II. It is contended that the court erred in refusing to submit certain special interrogatories that were requested by the appellants. There was no error in refusing the interrogatories in the form in which they were asked.

III. It is urged that the court erred in not directing a verdict in behalf of the appellants on the ground of insufficiency of the evidence. In view of the fact that the case must be remanded, and may be tried again, with the possibility of different evidence, we reserve any pronouncement on the question of the alleged error of the court in failing to direct a verdict.

For the error pointed out, the judgment of the district court must be, and it is,—*Reversed.*

STEVENS, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.